BENCHMARK INSURANCE COMPANY, APPELLANT, *v.* ROBERT M. SPARKS, INDIVIDUALLY; AND UNIVERSAL UNDERWRITERS' INSURANCE COMPANY, RESPONDENTS.

ROBERT M. SPARKS, INDIVIDUALLY, APPELLANT, *v.* UNIVERSAL UNDERWRITERS' INSURANCE COMPANY; AND BENCHMARK INSURANCE COMPANY, RESPONDENTS.

No. 46623

July 7, 2011                              254 P.3d 617

*Ken R. Bick*, Reno, for Benchmark Insurance Company.

*Moran Law Firm, LLC*, and *Jeffery A. Bendavid*, Las Vegas, for Universal Underwriters' Insurance Company.

*Murchison & Cumming, LLP*, and *William D. Naeve*, Las Vegas, for Robert M. Sparks.

Before SAITTA, HARDESTY and PARRAGUIRRE, JJ.

## OPINION

By the Court, PARRAGUIRRE, J.:

In this appeal, we consider whether an automobile liability insurer effectively limited its duty to defend its policyholder in a tort lawsuit brought against the policyholder. Specifically, we are asked to decide whether a provision in Benchmark Insurance Company's standard-form insurance policy unambiguously alerted the policyholder, Robert Sparks, that Benchmark could terminate its duty to defend him by depositing the policy's liability limits with the district court. Concluding that the policy provision at issue is ambiguous, we construe it in accordance with the reasonable expectations of the policyholder. Because a policyholder in Sparks' position would reasonably expect his insurer to procure a settle-

ment on his behalf or defend him until the policy limits have been used to satisfy a judgment entered against him, we affirm the district court's order in which it denied Benchmark's motion for summary judgment.

## FACTS

Sparks was test-driving a vehicle owned by a Las Vegas car dealership. During the test-drive, Sparks was involved in an accident in which one person was killed and another was seriously injured. The victims and their families brought a negligence action against both Sparks and the dealership.

Realizing that Sparks' liability for the accident could far exceed the $30,000 liability limit on his insurance policy, Benchmark filed an interpleader action, seeking permission to deposit the policy limits with the district court for dispersal to the appropriate parties. It then filed a motion for summary judgment, seeking a determination that once the court accepted the deposited funds, Benchmark would have no further obligation to defend Sparks in the underlying tort lawsuit.

Benchmark's justification for its summary judgment motion was a provision in its policy with Sparks, which stated:

> We will pay damages for ''bodily injury'' or ''property damage'' for which any ''insured'' becomes legally responsible because of an auto accident. . . . We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

Benchmark argued that its liability under the policy would be ''exhausted'' once it deposited the policy limits with the court. Because nothing in the plain language of the policy prevented it from ''exhausting'' its liability in this manner, Benchmark contended that it would no longer have a duty to defend Sparks in the lawsuit.

Benchmark's position prompted Sparks to file a complaint seeking alternative coverage against the car dealership's insurer, Universal Underwriters' Insurance Company, contending that he was a permissive user of the dealership's vehicle at the time of the accident. Universal filed a motion for summary judgment, contending that its policy with the dealership effectively withdrew coverage for any permissive user who was already covered under his or her own insurance policy.

The district court granted Benchmark permission to deposit the policy limits but denied Benchmark's motion for summary judgment, determining that Benchmark's duty to defend Sparks extended beyond its tender of the policy limits. Pursuant to the

court's order, Benchmark provided a defense for Sparks throughout the underlying trial and the subsequent appeal from the judgment on jury verdict. The district court also granted Universal's motion for summary judgment, determining that Universal had no duty to defend or indemnify Sparks. Benchmark and Sparks now appeal.

## DISCUSSION

Benchmark challenges the district court's order denying its summary judgment motion, an order which is generally not appealable. *Cromer v. Wilson*, 126 Nev. 106, 109, 225 P.3d 788, 790 (2010) ("A district court's order denying summary judgment is an interlocutory decision and is not independently appealable."). However, because the order appealed from was a "final judgment" within the meaning of NRAP 3A(b)(1), Benchmark's appeal is properly before this court. *Valley Bank of Nevada v. Ginsburg*, 110 Nev. 440, 445, 874 P.2d 729, 733 (1994) ("[A] final, appealable judgment is one that disposes of the issues presented in the case and leaves nothing for the future consideration of the court." (quotation and alteration omitted)). This court will review the district court's order de novo. *Cromer*, 126 Nev. at 109, 225 P.3d at 790.

Summary judgment is appropriate when the pleadings and other evidence demonstrate that no " 'genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law.' " *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (alteration in original) (quoting NRCP 56(c)). Here, the sole issue presented by Benchmark's appeal is one of contract interpretation—namely, whether the exhaustion provision in Benchmark's auto liability policy was effective to terminate its duty to defend Sparks once the policy limits had been deposited with the court. "Interpretation of a contract is a question of law that we review de novo." *Farmers Ins. Exch. v. Neal*, 119 Nev. 62, 64, 64 P.3d 472, 473 (2003).

*An insurer may contractually limit its duties if it does so unambiguously*

An insurance policy is a contract between a policyholder and an insurer in which the policyholder agrees to pay premiums in exchange for financial protection from foreseeable, yet unpreventable, events. 1 *New Appleman Insurance Law Practice Guide* § 1.03[1] (Leo Martinez et al. eds., 2010). As such, the duties undertaken by the policyholder and the insurer are defined by the terms of the policy itself. *Id.* In a standard auto liability policy, such as the one

at issue here, the insurer generally undertakes two duties in exchange for the policyholder's premium payments: (1) a duty to indemnify the policyholder for damages he or she causes while driving, and (2) a duty to defend the policyholder against any claims of liability brought against the policyholder in connection with these damages. *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 120 Nev. 678, 684, 99 P.3d 1153, 1156 (2004).

With regard to these two duties, we have held that "[t]he duty to defend is broader than the duty to indemnify." *Id.* at 686, 99 P.3d at 1158. In other words, as a general rule, an insurer's duty to defend is triggered whenever the potential for indemnification arises, and it continues until this potential for indemnification ceases. *Id.* at 686-87, 99 P.3d at 1158. Because the duties undertaken by an insurer are dictated by the terms of its contract with the policyholder, however, an insurer is free to contractually limit these duties—that is, to contract its way around this general rule. *Farmers Insurance Group v. Stonik*, 110 Nev. 64, 67, 867 P.2d 389, 391 (1994).

While an insurer such as Benchmark is free to contract its way around this general rule, insurance policies are contracts of adhesion. *Id.* That is, the policies are drafted by the insurer and are offered to the policyholder without any opportunity for the policyholder to negotiate the policy's terms. Thus, in order for an insurer to effectively limit its contractual obligations, the insurance policy's language must unambiguously convey the insurer's intent to do so. *Id.* "It follows that 'any ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured.'" *United Nat'l*, 120 Nev. at 684, 99 P.3d at 1156 (quoting *Vitale v. Jefferson Ins. Co.*, 116 Nev. 590, 594, 5 P.3d 1054, 1057 (2000)).

*Benchmark did not unambiguously convey that it could terminate its duty to defend by depositing the policy's liability limits with the district court*

Turning to the policy provision at issue in this case, we consider whether Benchmark effectively contracted its way around the general rule. More specifically, we consider whether the exhaustion provision in Benchmark's policy unambiguously alerted Sparks that Benchmark could terminate its duty to defend him while a potential for indemnification still existed under that policy.

A provision in an insurance policy is ambiguous "if it is reasonably susceptible to more than one interpretation." *See*

*Margrave v. Dermody Properties*, 110 Nev. 824, 827, 878 P.2d 291, 293 (1994). In analyzing whether the exhaustion provision in Benchmark's policy is susceptible to more than one interpretation, we find helpful the Supreme Court of North Carolina's decision in *Brown v. Lumbermens Mutual Casualty Co.*, 390 S.E.2d 150 (N.C. 1990). In *Brown*, the court considered whether a nearly identical exhaustion provision was ambiguous. In particular, both provisions contained the following pertinent clauses:

> We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. . . . Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

*Id.* at 153. The *Brown* court began its analysis by acknowledging that an insurer could exhaust its liability limit under the policy in any number of ways, one of which was depositing the funds with the district court.[1] *Id.* at 154. In this sense, the *Brown* court recognized that the exhaustion provision's final sentence, when read in isolation, might have been unambiguous. *Id.*

Nevertheless, the *Brown* court concluded that when the final sentence was read in context with the provision's prior sentences, the meaning of this final sentence became ambiguous. *Id.* Specifically, the court pointed to the provision's second sentence, in which the insurer plainly stated to the policyholder that it "will *settle or defend*, as [it] consider[s] appropriate, any claim or suit . . . ." *Id.* at 153, 154 (emphasis added). Based upon this sentence's plain language, the *Brown* court reasoned that the insurer had promised to do one of two things with regard to a claim brought against its policyholder: settle it or defend it. *Id.* at 154.

Thus, with the insurer having expressly promised the policyholder to do one of those two things, the *Brown* court considered the effect of this promise on the meaning of the provision's last sentence. *Id.* The *Brown* court determined that a policyholder, upon reading the first part of the provision and learning that the insurer had promised to settle or defend any claim, would reasonably understand that the insurer could "exhaust" its liability under the

---

[1]Although we base our holding on the exhaustion provision's contextual ambiguity, we note that other courts have found the same exhaustion provision to be ineffective on a different ground. These courts have concluded that an insurer does not truly "exhaust" its liability simply by depositing the policy's limits with the court. *See, e.g., Emcasco Ins. Co. v. Davis*, 753 F. Supp. 1458, 1461 (W.D. Ark. 1990) ("[T]he court holds that Emcasco may not shed itself of the duties which it contracted to provide by paying the policy limits into the registry of the court. In so doing, it has not 'exhausted' its limits [under the policy]."); *Anderson v. U.S. Fidelity & Guar. Co.*, 339 S.E.2d 660, 661 (Ga. Ct. App. 1986) ("We do not agree . . . that the term 'exhaust' encompasses the paying into court of the policy limits, but interpret that term to mean the payment either of a settlement or of a judgment wholly depleting the policy amount.").

policy in only one of those two ways. *Id.* Thus, the *Brown* court concluded that the provision, when read as a whole, was capable of two interpretations: either the insurer could exhaust its liability by any conceivable method, or it could exhaust its liability by only one of the two methods previously stated in the provision. *Id.* Given the provision's ambiguity, the *Brown* court concluded that "the provision . . . must be interpreted favorably to the insured. So interpreted, it means that the insurer's duty to defend continues until its coverage limits have been exhausted in the settlement of a claim or claims against the insured or until judgment against the insured is reached."[2] *Id.*

We find the *Brown* court's reasoning to be thoughtful and persuasive. Because the exhaustion provision at issue in *Brown* is identical in pertinent part to that at issue in this case, we conclude that the *Brown* court's analysis applies with equal effect here. Therefore, we hold that the exhaustion provision in Benchmark's auto liability policy is ambiguous because it is "reasonably susceptible to more than one interpretation."[3] *Margrave*, 110 Nev. at 827, 878 P.2d at 293.

---

[2]Although with less explanation, other jurisdictions have followed a rationale similar to that of the *Brown* court in finding identically worded exhaustion provisions to be ambiguous. *See, e.g., Stanley v. Cobb*, 624 F. Supp. 536, 537 (E.D. Tenn. 1986) ("[T]his Court is of the opinion that the limit of liability may not be exhausted in a manner other than that specified by the policy, *i.e.*, to either settle or defend."); *Aetna Cas. & Sur. Co. v. Sullivan*, 597 N.E.2d 62, 64 (Mass. App. Ct. 1992) ("A reasonable insured, we think, relying on the clear language of the first three sentences, would assume that the insurer was undertaking a duty either to defend or settle any lawsuit against him . . . , and he would understand . . . the next sentence only to include payments made by an insurer in the course of carrying out its obligations, set forth in the preceding three sentences, either to settle or defend.").

[3]We recognize that several jurisdictions have found this same language to be unambiguous. *See, e.g., Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 421 (La. 1988) ("[T]hese sentences [in the exhaustion provision] must be construed together, and when they are so construed there is no ambiguity."); *Maguire v. Ohio Cas. Ins. Co.*, 602 A.2d 893, 895 (Pa. Super. Ct. 1992) ("We agree with the analysis employed by . . . the Supreme Court of Louisiana [in *Pareti*]. The language of the policy is clear."); *Mid-Century Ins. Co. of Texas v. Childs*, 15 S.W.3d 187, 189 (Tex. App. 2000) ("[T]he policy language clearly reflects the parties' intent to limit the duty to defend . . . .").

We note, however, that the insurers in these cases had actually used the policy's limits to procure a settlement on behalf of their policyholders. *Pareti*, 536 So. 2d at 419; *Maguire*, 602 A.2d at 894; *Childs*, 15 S.W.3d at 188. The policyholders in these cases were arguing that the insurer's duty to defend against remaining claimants should continue nonetheless. Thus, when viewed from the perspective of what these policyholders were actually requesting, the rationale put forth in these decisions comports with that put forth in *Brown*. *See Pareti*, 536 So. 2d at 421 n.3 ("If an effort were made to construe the policy clause at issue here to cover the situation where there is a tender of policy limits, arguably it would be ambiguous in that context.").

When a provision in an insurance policy is ambiguous, the provision ''should be construed to effectuate the reasonable expectations of the insured.'' *National Union Fire Ins. v. Caesars Palace*, 106 Nev. 330, 332-33, 792 P.2d 1129, 1130 (1990). Here, after having read the exhaustion provision as a whole, Sparks would have reasonably expected that Benchmark would continue to provide him with a legal defense until it used his policy's liability limits to procure a settlement on his behalf or until the limits were used to satisfy a judgment entered against him in the tort lawsuit. Because Benchmark did not procure a settlement on Sparks' behalf, its duty to defend him continued until the policy's limits were used to satisfy a judgment in the lawsuit.[4] Accordingly, the district court properly denied Benchmark's motion for summary judgment.[5]

## CONCLUSION

While Benchmark was free to contract its way around the general rule regarding an insurer's duty to defend its policyholder, the exhaustion provision in its policy was ambiguous with regard to whether it could terminate its duty to defend Sparks by depositing the policy's liability limits with the district court. Due to this ambiguity, the exhaustion provision must be interpreted in accordance with the reasonable expectations of the policyholder. Because a policyholder in Sparks' position would have reasonably expected Benchmark to defend him until it had procured a settlement on his behalf or until the policy's limits had been used to satisfy a judgment entered in his tort lawsuit, the district court properly denied Benchmark's motion for summary judgment, and we therefore affirm the order of the district court.

SAITTA and HARDESTY, JJ., concur.

---

[4]Because the jury apportioned no monetary liability to Sparks, Benchmark never actually used the policy's limits to satisfy a judgment. As such, its duty to defend continued through the tort lawsuit's appeal process.

[5]We conclude that the district court's grant of summary judgment in favor of Universal was also proper. Because Benchmark had a continuing duty to defend Sparks, any potential that Universal may have had to indemnify Sparks as a permissive user was never triggered. Without a potential duty to indemnify Sparks, Universal had no duty to defend him. *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 120 Nev. 678, 686, 99 P.3d 1153, 1158 (2004) (''There is no duty to defend where there is no *potential* for coverage.'' (quotation and alteration omitted)); *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (stating that this court reviews a district court's grant of summary judgment de novo).