REDROCK VALLEY RANCH, LLC, A NEVADA LIMITED LIABILITY COMPANY, APPELLANT, *v.* WASHOE COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, RESPONDENT.

No. 55695

July 7, 2011 254 P.3d 641

[Rehearing denied September 19, 2011]
[En banc reconsideration denied November 15, 2011]

---

*Prezant & Mollath* and *Stephen C. Mollath*, Reno; *Parsons Behle & Latimer* and *Ross E. de Lipkau* and *Alysa M. Keller*, Reno, for Appellant.

*Richard A. Gammick*, District Attorney, and *Nathan J. Edwards*, Deputy District Attorney, Washoe County, for Respondent.

*Thomas J. Hall*, Reno, for Amici Curiae Northern Nevada Citizens for Water Conservation, Inc.; Vernon R. Banks; and Paula Banks.

Before CHERRY, GIBBONS and PICKERING, JJ.

## OPINION

By the Court, PICKERING, J.:

Redrock Valley Ranch, LLC (RVR) proposes to export water from one hydrographic basin to another in northern Nevada. Both basins lie in Washoe County. The State Engineer approved the transfer applications, but Washoe County declined to grant RVR a special use permit for the pipelines, pump houses, and other infrastructure needed to make the water exportation plan a reality. The district court upheld the denial of the special use permit, and RVR appeals.

Washoe County gave mixed signals concerning the project. RVR contends that the inconsistent positions taken by Washoe County, together with the State Engineer's approval of the transfer applications, required Washoe County to grant RVR's special use permit application. We disagree and affirm.

### I.

RVR filed seven applications with the State Engineer to change the place and manner of use of, and to appropriate, water for irrigation, domestic, and municipal purposes. RVR proposed to move the water approximately 16 miles from Red Rock Valley Hydrographic Basin to the Lemmon Valley Hydrographic Basin. Initially, Washoe County joined others in protesting the transfer applications. Later, Washoe County and RVR entered into a stipulation whereby RVR agreed to limit its interbasin transfer request to 1,273.39 acre-feet annually (afa), and, in exchange, Washoe County would withdraw its protests.

After a hearing, the State Engineer issued Ruling No. 5816. In this ruling, the State Engineer approved RVR's transfer applications as to 855 afa of water, subject to submission of a monitoring and mitigation plan. The ruling approved transfer of an additional 418 afa of water, for a total of 1,273 afa, if RVR met certain conditions. As required by NRS 533.370, the State Engineer made

findings that these changes in use would not conflict with existing rights or protectable interests in domestic wells, or threaten to prove detrimental to the public interest.

Meanwhile, RVR entered into an agreement with the Truckee Meadows Water Authority (TMWA). This agreement gave TMWA a right of first refusal to purchase RVR's transferable water rights. It also required RVR to apply to Washoe County for a special use permit for the water transfer facilities.

RVR's special use permit application outlined plans for 16.5 miles of pipelines, three well houses, a booster pump station, two small surge tanks, a 25,000-gallon water tank, backup generators, a small telemetry antenna, and paved access roads. The proposed project would adjoin single-family homes in Sierra Rancho Estates and Red Rock Estates in Washoe County. The water was not designated for any particular development but to assure redundancy and future availability.

While the special use permit application was pending, the Regional Water Planning Commission amended the Washoe County Comprehensive Regional Water Management Plan (Water Management Plan). The amendment noted RVR's water rights as a potentially available water resource; Washoe County is a voting member of the Regional Water Planning Commission.

The Washoe County Development Code requires five findings for a special use permit to issue. Washoe County Code § 110.810.30.[1] The fourth required finding is that "[i]ssuance of the permit will not be significantly detrimental to the public health, safety or welfare; injurious to the property or improvements of ad-

---

[1]Washoe County Code section 110.810.30 states in its entirety:

Prior to approving an application for a special use permit, the Planning Commission, Board of Adjustment or a hearing examiner shall find that all of the following are true:

(a) *Consistency.* The proposed use is consistent with the action programs, policies, standards and maps of the Comprehensive Plan and the applicable area plan;

(b) *Improvements.* Adequate utilities, roadway improvements, sanitation, water supply, drainage, and other necessary facilities have been provided, the proposed improvements are properly related to existing and proposed roadways, and an adequate public facilities determination has been made in accordance with Division Seven;

(c) *Site Suitability.* The site is physically suitable for the type of development and for the intensity of development;

(d) *Issuance Not Detrimental.* Issuance of the permit will not be significantly detrimental to the public health, safety or welfare; injurious to the property or improvements of adjacent properties; or detrimental to the character of the surrounding area; and

(e) *Effect of a Military Installation.* Issuance of the permit will not have a detrimental effect on the location, purpose or mission of the military installation.

jacent properties; or detrimental to the character of the surrounding area . . . ." *Id.*

RVR's special use permit application went first to the Washoe County Department of Community Development, where staff recommended approval and limiting review to the impact of the facilities, not whether the water should be exported.[2] After a public hearing, however, the Washoe County Board of Adjustment denied the special use permit application. The Board of Adjustment determined that the fourth finding required by Washoe County Code section 110.810.30—that issuance of the special use permit would not be significantly detrimental to the public, adjacent properties, or surrounding area—could not be made.

RVR appealed the Board's denial to the Washoe County Commission. Members of the public, including the North Valleys Citizen Advisory Board, opposed the project. Public concerns included: increased fire risk, impacts to existing wells, impacts to wildlife and livestock, chemical storage, visual impacts, risk of loss of wetlands, noise pollution, and air quality issues. The Commission questioned the need for the project. The area's economy had decayed between March 2006, when RVR filed its transfer applications with the State Engineer, and May 2009, when the special use permit application came before the Washoe County Commission. Another Washoe County water importation project—Fish Springs—authorized importation of 8,000 acre-feet of water, yet that water was going unused. This led the Commission to ask if the project's benefits justified its risks. Finally, the Commission received testimony and a report from a hydrologic consultant, Dr. Tom Myers, who opined that the project would be detrimental to the hydrology of the area, contradicting the State Engineer's findings.

Citing policy conflicts, noise, community character, public health, and property value issues, the Commission denied RVR's appeal. It stated that it could not find, as required by Washoe County Code section 110.810.30, that issuance of the permit would "not be significantly detrimental to the public health, safety or welfare; injurious to the property or improvements of adjacent properties; or detrimental to the character of the surrounding area."

RVR sued Washoe County for judicial review under NRS 278.0233, declaratory relief, and damages. Recognizing that "[t]he grant or denial of a request for a special use permit is a discretionary act," which limits judicial review to the record before the agency or local governmental entity involved, *City of Las Vegas v. Laughlin*, 111 Nev. 557, 558, 893 P.2d 383, 384 (1995), the dis-

---

[2]Later, at the Washoe County Commission hearing, the Washoe County District Attorney's Office disagreed with staff on the scope of project review.

trict court confined its review to the record before the Washoe County Commission and denied relief.[3] It concluded that substantial evidence supported Washoe County's decision to deny RVR's application for a special use permit and that the denial did not amount to an abuse of discretion.

Our review of the district court's decision is de novo, *Kay v. Nunez*, 122 Nev. 1100, 1105, 146 P.3d 801, 805 (2006), and we affirm.

## II.

On appeal, RVR argues that Washoe County did not have authority to deny the special use permit application. In its view, the State Engineer proceedings had both preemptive and preclusive effect and, had Washoe County not delved into issues outside its authority, substantial evidence was lacking to support the denial. Even though judicial review of a special use permit's denial normally is deferential, *see Laughlin*, 111 Nev. at 558, 893 P.2d at 384, RVR argues for de novo review here because Washoe County arrogated to itself discretion belonging exclusively to the State Engineer. *See Tighe v. Las Vegas Metro. Police Dep't*, 110 Nev. 632, 634-35, 877 P.2d 1032, 1034 (1994) (while the court "will affirm [an] agency's decision if it is supported by substantial evidence," and may not "substitute [its] judgment for that of the agency as to the weight of evidence . . . the construction of a statute is a question of law and independent appellate review, rather than a more deferential standard of review, is appropriate").

RVR takes too restrictive a view of Washoe County's authority, particularly in light of *Serpa v. County of Washoe*, 111 Nev. 1081, 1085, 901 P.2d 690, 693 (1995). We conclude that the State Engineer's ruling neither preempted nor precluded Washoe County from denying RVR's application for a special use permit for the reasons it did and that substantial relevant evidence supported Washoe County's denial of the special use permit.

## A.

NRS 533.370 vests the State Engineer with authority to decide whether to reject or approve an application for an interbasin transfer of groundwater. This statute works in tandem with other "Nevada water law statutes [that] define separate roles for the State Engineer and Washoe County"; it does not preempt Washoe County's authority over political, social, and economic decisions

---

[3]The district court declined to consider supplemental exhibits from the State Engineer's hearing because RVR did not establish these were part of the record before the Washoe County Commission.

relating to water. *Pyramid Lake Paiute Tribe v. Washoe Co.*, 112 Nev. 743, 749-50, 918 P.2d 697, 701-02 (1996). As this court held in *Serpa*, 111 Nev. at 1085, 901 P.2d at 693, "[t]here is no state law indicating that the ruling of the State Engineer preempts a county or other governmental entity from enacting zoning laws that impose limitations on water use that are more restrictive than those of the State Engineer." A county may limit water use "as long as those restrictions are consistent with the relevant long-term comprehensive plans, Nevada law, and notions of public welfare." *Id.*

In this case, the State Engineer made a finding that "the applications . . . will not threaten to prove detrimental to the public interest." No question the wording is similar to the fourth finding required for issuance of a Washoe County special use permit: "[i]ssuance of the permit will not be significantly detrimental to the public health, safety or welfare; injurious to the property or improvements of adjacent properties; or detrimental to the character of the surrounding area . . . ." Washoe County Code § 110.810.30. However, the public interest finding made by the State Engineer does not obviate local social, political, and economic concerns. *Compare Pyramid Lake Paiute Tribe*, 112 Nev. at 749-50, 918 P.2d at 701-02 (the State Engineer lacks the staffing and statutory charge for such determinations), *with Serpa*, 111 Nev. at 1084, 901 P.2d at 692 (the county's discretion to independently define "orderly physical growth and development . . . which will cause the least amount of natural resource impairment," NRS 278.230(1)(a), "necessarily includes the ability of a county government to determine water availability for itself").

Here, the Washoe County Commission limited the bases for denying the permit to policy conflicts, noise impacts, changes to community character, public health issues, and lowering of property values. It determined that adequate, less risky water supply alternatives existed to the plan RVR proposed. Although the public presented concerns that fell within the State Engineer's purview, such as impacts to existing wells, the State Engineer's ruling did not, and could not, limit Washoe County's ability to reject the special use permit for the social and economic reasons discussed above, which are separate and distinct from the issues addressed by the State Engineer.

RVR distinguishes *Serpa*, arguing that unlike the project in that case, its project earned regional approval by its mention as a "[p]otentially available water resource" in the 2009 amendments to the Water Management Plan. This reads more into the project's mention in the Water Management Plan than is fair. "Potential" means "[p]ossible as opposed to actual." XII *Oxford English Dictionary* 224 (2d ed. 1989). Describing a water resource as "po-

tentially available'' is like saying it is "possibly available," as distinguished from "actually available." Such a description does not connote approval.

The Water Management Plan recognizes that cities and counties, including Washoe County, "will be the final authorities regarding necessary infrastructure improvements." *See Sustainable Growth v. Jumpers, LLC*, 122 Nev. 53, 65 n.35, 128 P.3d 452, 461 n.35 (2006) (while master plans deserve deference from state and local agencies, they should not be considered "a legislative straightjacket from which no leave may be taken" (internal quotation marks omitted)). Here, Washoe County's land use ordinances, Washoe County Code sections 110.810.00 and 110.810.030, together with its comprehensive plan (North Valleys Area Plan),[4] provided the framework upon which Washoe County rested its denial of RVR's special use permit application. Its authority to act in regard to RVR's special use permit application was not preempted by NRS 533.370 or State Engineer Ruling No. 5816.

### B.

RVR next argues that, since Washoe County did not appeal the State Engineer's ruling, issue and claim preclusion attach to that decision. To RVR this means that, whatever authority it might otherwise have, Washoe County could not, in the context of this special use permit application, redetermine any issue or claim that was or could have been decided by the State Engineer in connection with Ruling No. 5816. Put another way, RVR extrapolates from the State Engineer's authority in NRS 533.370 and its victory in Ruling No. 5816, a mandatory finding by Washoe County that the special use permit would not "be significantly detrimental" to the public.

Issue and claim preclusion "protect the finality of decisions and prevent the proliferation of litigation," *Littlejohn v. United States*, 321 F.3d 915, 919 (9th Cir. 2003), but do not apply unless specific requirements are met. *See Five Star Capital v. Ruby*, 124 Nev. 1048, 1055, 194 P.3d 709, 713 (2008). Among other requirements, for issue preclusion to attach, "the issue decided in the prior [proceeding] must be identical to the issue presented in the current [proceeding]"; for claim preclusion "the subsequent action

---

[4]Goal 18 of the North Valleys Area Plan is to "[m]aintain and enhance the value of wetlands and their associated habitats for their groundwater recharge, aesthetic, environmental, educational, recreational, effluent reuse, storm water runoff and flood control purposes." Rather than 100 percent of the valley's perennial yield, the North Valleys Area Plan Policy NV.1.3 limits new development units as part of land use designation change to 85 percent of the sustainable water yield.

[must be] based on the same claims or any part of them that were or could have been brought in the first case.'' *Id.* at 1054-55, 194 P.3d at 713 (footnotes omitted).[5]

An agency decision can result in issue or claim preclusion as to a subsequent decision made by another court or a different agency. *See University & Cmty. Coll. Sys. v. Sutton*, 120 Nev. 972, 984, 103 P.3d 8, 16 (2004); *Britton v. City of North Las Vegas*, 106 Nev. 690, 692, 799 P.2d 568, 569 (1990). But ''care should be taken before one agency is forced to give collateral effect to the decisions of another.'' 2 Charles H. Koch, Jr., *Administrative Law and Practice* § 5:72 (3d ed. 2010). While ''[p]ublic interest is part of every agency's decision . . . public interest for one agency is not the same as public interest for another.'' *Id.* In the interagency setting, ''preclusion may be defeated by finding such an important difference in the function of different agencies that one does not have the authority to represent the interests of the other.'' *Holmberg v. State Div. of Risk Management*, 796 P.2d 823, 826 (Alaska 1990) (citing *Porter & Dietsch, Inc. v. F.T.C.*, 605 F.2d 294 (7th Cir. 1979)).

Washoe County and the State Engineer play distinct roles in managing water in the context of land use and development. *Pyramid Lake Paiute Tribe*, 112 Nev. at 749, 918 P.2d at 701. The Legislature has charged the State Engineer with evaluating proposed water appropriations, requiring the State Engineer to deny a permit ''where there is no unappropriated water in the proposed source of supply, or where its proposed use or change conflicts with existing rights or with protectable interests . . . or threatens to prove detrimental to the public interest.'' NRS 533.370(5).[6] In contrast, Nevada counties are ''authorized and empowered to regulate and restrict the improvement of land and to control the location and soundness of structures.'' NRS 278.020(1). The State Engineer's public interest mandate does not extend to land use concerns, such as zoning and related matters, *Serpa*, 111 Nev. at 1085, 901 P.2d at 692-93, and the grant or denial of a special use permit is for the county, not the State Engineer to decide.

---

[5]Claim preclusion is a nonstarter in this case, given the State Engineer's lack of institutional capacity to grant or deny a local special use permit. Citing *Willerton v. Bassham*, 111 Nev. 10, 17 n.6, 889 P.2d 823, 827 n.6 (1995), Washoe County asserts that the State Engineer's ruling is a stipulation-based judgment and, therefore, issue preclusion cannot apply. We do not need to decide the impact Washoe County's stipulated withdrawal from the State Engineer proceeding had on RVR's ability to assert issue preclusion since we reject issue preclusion on other grounds.

[6]We note that NRS 533.370 was amended July 1, 2011. A.B. 115, 76th Leg. (Nev. 2011). However, the amendments do not apply here because RVR's application was filed before July 1, 2011. *Id.* Our references are to the prior, applicable version of the statute.

Nevada's counties have the authority, indeed the obligation, to make political and economic decisions concerning water project alternatives. *Pyramid Lake Paiute Tribe*, 112 Nev. at 750-51, 918 P.2d at 701-02. This authority exists separate and apart from the public interest finding required from the State Engineer. *Id*. Although there may be some overlap between the public interest considerations of the State Engineer and that of the Nevada counties, most of the issues the Washoe County Commission considered—increased fire risk, impacts to wildlife and livestock, chemical storage, visual impacts, noise pollution, property values, community character, air quality issues, and impact on existing land uses—fall squarely within the purview of the counties under NRS Chapter 278. *See Serpa*, 111 Nev. at 1084, 901 P.2d at 692.[7]

"The availability of issue preclusion is a mixed question of law and fact," in which "legal issues predominate" and, "[o]nce it is determined [to be] available, the actual decision to apply it is left to the discretion of the" tribunal in which it is invoked. *Sutton*, 120 Nev. at 984, 103 P.3d at 16. Even giving RVR the benefit of the doubt on the identity of some of the issues (and assuming issue preclusion applies despite *Willerton*, discussed *supra* note 5), we cannot conclude that the Washoe County Commission abused its discretion in rejecting issue preclusion on the record it had.

## C.

RVR next complains that Washoe County violated the stipulation entered into before the State Engineer when it denied the special use permit. A written stipulation is a species of contract. *See Lehrer McGovern Bovis v. Bullock Insulation*, 124 Nev. 1102, 1118, 197 P.3d 1032, 1042 (2008). Contract interpretation is a question of law and, as long as no facts are in dispute, this court reviews contract issues de novo, looking to the language of the agreement and the surrounding circumstances. *Id*. In addition, because public policy favors the settlement of disputes, stipulations should not be easily set aside. *Mullins v. Oates*, 179 P.3d 930, 937 (Alaska 2008).

---

[7]Of note, the Legislature requires the State Engineer to consider the need for the water project as part of the application analysis. NRS 533.370(6)(a). The Washoe County Commission considered need as well, determining that the community did not need the project because water from another recently approved project was going unused, making it a less risky alternative to simply maintain the status quo. The State Engineer may rely on the counties to determine need in light of competing alternatives, *Pyramid Lake Paiute Tribe*, 112 Nev. at 752, 918 P.2d at 703, so issue preclusion with respect to the need determination is doubtful, especially given the profound change in the area's economy.

Here, RVR and Washoe County entered into a stipulation whereby RVR agreed to request less water from the State Engineer and, in exchange, Washoe County agreed to drop its protests to the water right applications. Washoe County did not agree to issue a special use permit as part of the stipulation, nor do the surrounding circumstances indicate such an agreement. The stipulation concerned the proceedings before the State Engineer, not RVR's later application for a special use permit.

### D.

RVR's final challenge is to the sufficiency of the evidence before the Washoe County Commission. It argues that the Washoe County Commission had no evidence that the project did not meet the requirements of Washoe County Code section 110.810.030(d), *see supra* note 1, and that the Commission went beyond the scope of special use permit review, which it contends is limited to determining "if the uses have the potential to adversely affect other land uses, transportation systems, or public facilities in the vicinity," as set forth in the Washoe County Code's stated purpose for its special use permit section. Washoe County Code § 110.810.00.

A public agency may rely on public testimony in denying a special use permit. *Laughlin*, 111 Nev. at 559, 893 P.2d at 385. Here, 34 members of the public testified at the Commission hearing about increased fire risk, impacts to existing wells, impacts to wildlife and livestock, chemical storage, visual impacts, noise pollution, and air quality issues. That testimony provides substantial evidence to support Washoe County's conclusion that it could not make the required finding that the special use permit would not be "be significantly detrimental" under Washoe County Code section 110.810.30(d). *See Stratosphere Gaming Corp. v. City of Las Vegas*, 120 Nev. 523, 528, 96 P.3d 756, 760 (2004) (significant public opposition afforded "substantial evidence" for the denial of a site development plan application, defining "substantial evidence" as "that which a reasonable mind might accept as adequate to support a conclusion" (internal quotations omitted)). Even if the development code limited Washoe County's discretionary review, the public testimony indicates that the project would adversely affect adjacent land uses. A reasonable person could consider the public testimony adequate to support Washoe County's decision.

We therefore affirm.

CHERRY and GIBBONS, JJ., concur.