**133 Nev., Advance Opinion 70**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA
DEPARTMENT OF TRANSPORTATION,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF CLARK;
AND THE HONORABLE GLORIA
STURMAN, DISTRICT JUDGE,
Respondents,
    and
FRED NASSIRI, INDIVIDUALLY AND
AS TRUSTEE OF THE NASSIRI LIVING
TRUST, A TRUST FORMED UNDER
NEVADA LAW,
Real Party in Interest.

No. 70098

FILED

SEP 27 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus challenging district court orders denying summary judgment and a motion to exclude an expert witness report.

*Petition granted.*

Adam Paul Laxalt, Attorney General, Dennis Vincent Gallagher, Chief Deputy Attorney General, Joe Vadala, Special Counsel, and Janet L. Merrill, Senior Deputy Attorney General, Carson City; Kemp, Jones & Coulthard, LLP, and William L. Coulthard and Eric M. Pepperman, Las Vegas,
for Petitioner.

Garman Turner Gordon LLP and Eric R. Olsen and Dylan T. Ciciliano, Las Vegas,
for Real Party in Interest.

17-32853

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, CHERRY, C.J.:

In this petition for a writ of mandamus, we address whether the district court inappropriately denied petitioner Nevada Department of Transportation's (NDOT) motions for summary judgment on a landowner's contract claims concerning a settlement agreement in a condemnation action. These questions involve whether NDOT breached the settlement agreement or its implied duty of good faith and fair dealing by building an overpass (a "flyover") adjacent to the landowner's property and whether the property owner may seek rescission based on a claim of unilateral mistake regarding whether NDOT would construct the flyover. We conclude that the district court erred in declining to grant summary judgment by interpreting the contract to include a duty imposed outside the express terms of the contract, and allowing a claim for unilateral mistake to proceed even though the landowner's claim was barred by the statute of limitations. Accordingly, we grant the petition.

*FACTS AND PROCEDURAL HISTORY*

*Factual background*

Beginning in 1999, NDOT initiated a freeway project to realign the Blue Diamond Interchange with Interstate 15 in Clark County (the Blue Diamond Project). NDOT sought federal funding for the Blue Diamond Project from the Federal Highway Administration (FHWA). The

---

[1]The Honorable Ron D. Parraguirre, Justice, voluntarily recused himself from participation in the decision of this matter.

 

FHWA, under the National Environmental Policy Act (NEPA), required NDOT to complete an environmental impact study and hold several public informational meetings regarding the Blue Diamond Project, memorialized in an "Environmental Assessment" for final approval. The Environmental Assessment, which was publicly available at libraries and NDOT's office, noted that the Blue Diamond Project could include a flyover when traffic demands warranted its construction and funding became available. The FHWA approved the Environmental Assessment and federal funding for the Blue Diamond Project in 2004.

The Blue Diamond Project required approximately 4.21 acres of adjacent land owned by real party in interest Fred Nassiri. NDOT filed a condemnation action against Nassiri to acquire the property. During negotiations of a potential settlement, NDOT allegedly never disclosed that the Blue Diamond Interchange could contain a flyover.

In 2005, NDOT and Nassiri entered into a settlement agreement.[2] As part of the settlement, Nassiri transferred NDOT's required 4.21 acres to NDOT, acquired 24.42 acres of NDOT property (the "Exchange Property") adjoining the 4.21 acres, and paid NDOT approximately $23 million dollars. The purchase price was based on a property appraisal by NDOT, which Nassiri accepted after being provided an exclusive review period of several weeks.

The settlement agreement contained several notable terms. First, the settlement agreement required NDOT to transfer the property

---

[2]The parties subsequently amended the settlement agreement in order to correct an acreage error in the Exchange Property and adjust the sales price commensurate with the change.

SUPREME COURT
OF
NEVADA

(O) 1947A

to Nassiri via quitclaim deed. Second, the agreement contained an integration clause. Third, the agreement specified that the negotiated price was "not an admission by any party as to the fair market value of the Subject Property." However, the settlement agreement did not contain any restriction on NDOT's future construction efforts at the Blue Diamond Interchange. Finally, the agreement stated that "[t]he Exchange Property shall be the . . . property set forth in the legal description and diagram attached." According to Nassiri, the diagram featured the Blue Diamond Interchange without a flyover.

Later that year, NDOT began a new project at the Blue Diamond Interchange. NDOT ultimately adopted the Blue Diamond Project's flyover design. In 2010, construction began on the flyover. Soon thereafter, Nassiri filed an administrative claim with the State Board of Examiners due to concerns that the flyover would obstruct his property's visibility. The Board rejected his claim.

*Procedural history*

*Complaint and motions for summary judgment*

In 2012, Nassiri filed suit against NDOT, alleging, among other things, breach of the settlement agreement and breach of the settlement agreement's implied covenant of good faith and fair dealing. Nassiri also sought equitable rescission of the settlement agreement. Nassiri's claims pertained to NDOT's allegedly undisclosed plans to construct a flyover, which Nassiri claimed destroyed the visibility of his adjacent property.

NDOT filed three unsuccessful motions for summary judgment relevant to this petition. The first motion pertained to Nassiri's claims for breach of contract and good faith and fair dealing. There, NDOT argued

SUPREME COURT
OF
NEVADA

(O) 1947A

that it had no contractual or legal obligation under the settlement agreement to restrict construction of the flyover or preserve the visibility of the Exchange Property after conveying it to Nassiri via quitclaim deed. The district court denied the motion.

In the second motion for summary judgment, NDOT argued that Nassiri's unilateral mistake claim could not substantiate a rescission remedy, and even if it could, Nassiri's unilateral mistake claim was barred by the statute of limitations. The district court denied NDOT's motion.

The third motion for summary judgment arose after the district court held a limited bench trial regarding the unilateral mistake claim's statute of limitations and found that Nassiri's claim was not barred. In that motion, NDOT again argued that equitable rescission was not appropriate. The district court refused to grant summary judgment.

## DISCUSSION

### NDOT's petition merits our consideration

NDOT filed this writ petition challenging the district court's denials of its summary judgment motions. NDOT asserts that this court should consider its petition because it raises important legal issues and matters of public policy. We agree.

"A writ of mandamus is available to compel the performance of an act that the law requires . . . or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech, Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008); *see* NRS 34.160. Generally, a writ will not issue if a petitioner has a plain, speedy, and adequate remedy in the ordinary course of the law, NRS 34.170, and "an appeal from the final judgment typically constitutes an adequate and speedy legal remedy," *Int'l Game Tech, Inc.*, 124 Nev. at 197, 179 P.3d at

 

558. In particular as to orders denying summary judgment, we usually decline to consider writ petitions challenging such orders, except that we may choose to exercise our discretion to hear a petition "where no disputed factual issues exist and, pursuant to clear authority under a statute or rule, the district court is obligated to dismiss an action." *Smith v. Eighth Judicial Dist. Court*, 113 Nev. 1343, 1345, 950 P.2d 280, 281 (1997). We may also exercise our discretion to hear a petition when "an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition." *NDOT v. Eighth Judicial Dist. Court* (*Ad America*), 131 Nev., Adv. Op. 41, 351 P.3d 736, 740 (2015) (internal quotation marks omitted); *see also Smith*, 113 Nev. at 1344, 950 P.2d at 281.

In *Ad America*, we recently considered a similar petition by NDOT in the context of condemnation proceedings. *See* 131 Nev., Adv. Op. 41, 351 P.3d at 740. There, NDOT petitioned this court after the district court granted partial summary judgment to the plaintiff on an inverse condemnation claim, even though the record indicated that NDOT "had not physically occupied [the] property, passed any regulation or rule affecting [the] property, or taken any formal steps to commence eminent domain proceedings against [the] property." *Id.* This court entertained the petition because it (1) raised an important issue regarding Nevada's takings laws, (2) presented an important question of policy about NDOT's "ability to engage in efficient, long-term planning dependent on federal funding" for highway improvements, and (3) served judicial economy because NDOT "requir[ed] multiple acquisitions of private property and the inevitability of other similar long-term projects in the future." *Id.*

In this case, as in *Ad America*, NDOT's petition raises an important issue of law and an important policy question, and our consideration of it serves judicial economy. First, the extent to which a court may impose upon NDOT legal obligations not expressly agreed to under a settlement agreement presents an important issue of law. Second, Nassiri's claims raise an important question of policy about NDOT's ability to engage in long-term planning and further improve Nevada's highways. Finally, judicial economy is served by entertaining NDOT's petition because NDOT frequently engages in condemnation settlements and, inevitably, will face similar issues in the future. Moreover, pursuant to clear authority, the district court is obligated to dismiss the claims against NDOT. Accordingly, we exercise our discretion to address NDOT's petition.

*The district court erred as a matter of law by denying summary judgment on Nassiri's claims*

*Standard of review*

Even in a writ petition, this court reviews de novo issues of law, such as contract and statutory interpretation. *Int'l Game Tech., Inc.*, 124 Nev. at 198, 179 P.3d at 559; *see Redrock Valley Ranch, LLC v. Washoe Cty.*, 127 Nev. 451, 460, 254 P.3d 641, 647-48 (2011) ("Contract interpretation is a question of law and, as long as no facts are in dispute, this court reviews contract issues de novo."); *see also Benchmark Ins. Co. v. Sparks*, 127 Nev. 407, 411, 254 P.3d 617, 620 (2011) (reviewing a district court's order denying summary judgment de novo). When reviewing an order granting or denying summary judgment in the context of a writ petition, we must also be cognizant of the summary judgment standard, that "[s]ummary judgment is appropriate when the pleadings



and other evidence demonstrate that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted).

*NDOT did not breach the settlement agreement by building the flyover*

NDOT argues that the district court should have granted its motion for summary judgment on Nassiri's breach of contract claim because NDOT could not have breached the settlement agreement, as it had no contractual duty to refrain from building the flyover. Nassiri responds that NDOT breached the settlement agreement by building the flyover, which interfered with the view from the Exchange Property that he acquired. We agree with NDOT.

A settlement agreement is a contract governed by general principles of contract law.[3] *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). Breach of contract is the material failure to perform "a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 135, 734 P.2d 1238, 1240 (1987) (internal quotation marks omitted). "[C]ontracts will be construed from their written language and enforced as written." *The Power Co. v. Henry*, 130 Nev. 182,

---

[3]NDOT also argues that the quitclaim deed is the governing contract because the settlement agreement merged into the deed. "The general rule concerning a contract made to convey . . . property is that once a deed has been executed and delivered, the contract becomes merged into the deed." *Hanneman v. Downer*, 110 Nev. 167, 177, 871 P.2d 279, 285 (1994) (internal quotation marks omitted). However, "[w]hether merger is applicable depends upon the intention of the parties." *Id.* (internal quotation marks omitted). Here, the parties explicitly agreed in the settlement agreement that the deed would not merge into the agreement. As such, the settlement agreement applies to Nassiri's contract claims.

 

189, 321 P.3d 858, 863 (2014). "[N]either a court of law nor a court of equity can interpolate in a contract what the contract does not contain." *Traffic Control Servs., Inc. v. United Rentals Nw., Inc.*, 120 Nev. 168, 175-76, 87 P.3d 1054, 1059 (2004).

Here, NDOT was not contractually obligated to refrain from constructing the flyover. The settlement agreement neither contains any mention of a flyover, nor restricts NDOT's future development plans at the Blue Diamond Interchange, nor contemplates the preservation of view or visibility of Nassiri's property. Although the settlement agreement references a diagram of the Blue Diamond Interchange allegedly without a flyover, neither the diagram nor the agreement established that the diagram represented the perpetual configuration of the Blue Diamond Interchange.

Further, because the settlement agreement does not restrict the flyover's construction or reference the view from the Exchange Property, Nassiri's argument that visibility was a component of the agreement and the district court's determination that questions of fact existed with regard to visibility effectively revived the possibility that an implied duty to avoid infringing upon Nassiri's view over a public highway might be inserted into the settlement agreement. This determination is particularly concerning given that, almost 50 years ago, this court expressly repudiated the implied negative easement of visibility, holding that "[t]he infringement upon an abutting owner's light, air and view over a public highway" is not actionable "unless such owner has acquired a right to light, air and view by express covenant." *See Probasco v. City of Reno*, 85 Nev. 563, 565-66, 459 P.2d 772, 774 (1969). Nassiri did not

SUPREME COURT
OF
NEVADA

(O) 1947A

9

acquire an express covenant for the property's view, therefore, his claim fails.

Nothing in the four corners of the settlement agreement prohibited the construction of a flyover, and holding otherwise would effectively allow Nassiri to enforce a nonexistent implied negative easement of visibility. Therefore, we conclude that no genuine issues of fact exist and that, pursuant to clear authority, NDOT is entitled to summary judgment on Nassiri's breach of contract claim. Therefore, the district court erred in not granting NDOT summary judgment.

*NDOT did not breach the implied covenant of good faith and fair dealing*

Nassiri argues that even if NDOT did not breach express terms of the settlement agreement, NDOT breached the implied covenant of good faith and fair dealing by (1) not constructing the Blue Diamond Interchange as represented to Nassiri, and (2) destroying the visibility of the Exchange Property, which formed the basis of the Exchange Property's appraisal and sales value. We disagree.

Even if a defendant does not breach the express terms of a contract, a plaintiff "may still be able to recover damages for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 232, 808 P.2d 919, 922 (1991). "[A]ll contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Nelson v. Heer*, 123 Nev. 217, 226, 163 P.3d 420, 427 (2007).

Here, NDOT did not breach the covenant of good faith and fair dealing. First, as discussed above, the settlement agreement did not

restrict NDOT's construction of a flyover. If Nassiri was concerned about NDOT's future construction on the Blue Diamond Interchange, Nassiri could have addressed these concerns in the settlement agreement. Further, plans for a potential flyover were available to the public at libraries and NDOT's office at the time of the settlement agreement, and Nassiri could have readily uncovered NDOT's potential plans for a flyover. Finally, regardless of the relationship of the Exchange Property's visibility to its market value, the settlement agreement explicitly states that the agreed-upon sales price was "not an admission by any party as to the fair market value of the [Exchange] Property." Therefore, NDOT did not violate the spirit and intent of the settlement agreement, and we conclude that no genuine issues of fact exist and that, pursuant to clear authority, NDOT is entitled to summary judgment on Nassiri's claim for breach of good faith and fair dealing. The district court erred in not granting NDOT summary judgment.[4]

*Nassiri's unilateral mistake claim is barred by the statute of limitations*

NDOT also argues that Nassiri's unilateral mistake claim is time-barred because he did not file the action until four years after the execution of the settlement agreement, when he knew or should have known of his alleged mistake regarding the flyover. We agree.

---

[4]NDOT also argues that if Nassiri's contract claims are allowed to proceed to trial, this court should preclude Nassiri's planned damages evidence because it is irrelevant and was not properly disclosed. Because we hold that Nassiri's contract claims fail as a matter of law, we need not address this issue.

 

An action for relief on the grounds of mistake is subject to a three-year limitations period, which "shall be deemed to accrue upon the discovery by the aggrieved party of the facts constituting the . . . mistake." NRS 11.190(3)(d). "In a discovery based cause of action, a plaintiff must use due diligence in determining the existence of a cause of action." *Bemis v. Estate of Bemis*, 114 Nev. 1021, 1025, 967 P.2d 437, 440 (1998). "Dismissal on statute of limitations grounds is only appropriate when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the facts giving rise to the cause of action." *Id.* (internal quotation marks omitted).

Here, NDOT publicly disclosed its proposed plans for the Blue Diamond Project, including the potential flyover, in its 2004 Environmental Assessment. *See Ad America*, 131 Nev., Adv. Op. 41, 351 P.3d at 744 (finding that there was public knowledge of NDOT's plans, given that "NEPA required disclosure of the plans and the opportunity for public comment"). While the Environmental Assessment was available to Nassiri the year before he signed the settlement agreement, Nassiri failed to discover the plan for a potential flyover. Because Nassiri should have discovered the plans for a flyover more than three years prior to filing his complaint, we conclude that his unilateral mistake claim is time-barred, and the district court erred in declining to grant NDOT summary judgment on this ground.[5]

_____

[5]Because we hold that Nassiri's claim for unilateral mistake was barred by the statute of limitations, we need not address the parties' other arguments in this regard.

Supreme Court
of
Nevaoa

(O) 1947A

## CONCLUSION

We conclude that the undisputed material facts demonstrate that NDOT was entitled to summary judgment on each of Nassiri's claims as a matter of law. Therefore, we grant NDOT's petition. The clerk of this court shall issue a writ of mandamus instructing the district court to vacate its previous orders denying summary judgment and enter a new order granting summary judgment in favor of NDOT on each of Nassiri's claims.

_____, C.J.
Cherry

We concur:

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Stiglich

