134 Nev., Advance Opinion 75

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

ANGELA DECHAMBEAU; AND JEAN-PAUL DECHAMBEAU, BOTH INDIVIDUALLY AND AS SPECIAL ADMINISTRATORS OF THE ESTATE OF NEIL DECHAMBEAU,
Appellants,
vs.
STEPHEN C. BALKENBUSH, ESQ.; AND THORNDAL, ARMSTRONG, DELK, BALKENBUSH & EISINGER, A NEVADA PROFESSIONAL CORPORATION,
Respondents.

No. 72879



FILED

SEP 27 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment on jury verdict, an amended judgment, and an order denying a motion for new trial in a legal malpractice action. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

*Affirmed.*

Kozak & Associates, LLC, and Charles R. Kozak, Reno,
for Appellants.

Molof & Vohl and Robert C. Vohl, Reno; Pollara Law Group and Dominique A. Pollara, Sacramento, California,
for Respondents.

_____

BEFORE SILVER, C.J., TAO and GIBBONS, JJ.

## OPINION

By the Court, TAO, J.:

In their joint case conference report, the parties to this civil lawsuit stipulated to a discovery schedule that expressly waived the usual requirement, otherwise contained in Rule 16.1(a)(2)(B) of the Nevada Rules of Civil Procedure (NRCP), that written reports be produced and exchanged summarizing the anticipated testimony of all expert witnesses designated to appear at trial. Much later in the case, the district court (sua sponte but without objection by either party) entered a scheduling order that extended the deadline for identifying expert witnesses. The order said nothing one way or the other about whether the stipulation to waive expert reports continued in effect or not.

The question raised in this appeal is whether, in the face of that silence, the original stipulation continued in effect or rather must be deemed to have been entirely superseded by the new order. We conclude that the intent of the parties ultimately controls the duration and scope of the stipulation and, in the absence of any evidence of an intention to the contrary, the stipulation should be read to continue in effect until and unless expressly vacated either by the court or by a subsequent agreement between the parties.

### FACTUAL SUMMARY

This case originated as an action in medical malpractice that eventually degraded into a legal malpractice suit. The plaintiffs-appellants, members of the DeChambeau family (the DeChambeaus), allege that they retained the respondents, attorneys licensed to practice law in Nevada (hereafter collectively referred to as Balkenbush), to handle a medical malpractice action on behalf of a deceased relative, but that Balkenbush

 

handled the case negligently and that negligence led to entry of a final judgment adverse to the DeChambeaus. The family then sued Balkenbush for legal malpractice. This appeal arises from the legal malpractice action.

After the filing of the complaint and answer, the parties filed a joint case conference report in which they mutually stipulated to waive the requirement, otherwise contained in NRCP 16.1(a)(2)(B), that the parties must exchange written reports summarizing the anticipated testimony of any expert witnesses retained by either party. The joint case conference report also contained an agreed-upon discovery cut-off date. Before the close of discovery, Balkenbush retained and designated an expert witness named Dr. Fred Morady. Pursuant to the stipulation, no expert report was prepared.

Shortly before trial, the district court entered summary judgment in favor of Balkenbush, finding that the DeChambeaus' claim failed for lack of causation (an issue unrelated to the question before us in this appeal). The DeChambeaus appealed to the Nevada Supreme Court and, in an unpublished order, the supreme court reversed the grant of summary judgment and remanded the matter back to the district court.

By the time the supreme court issued its order of reversal and remand, all of the deadlines set in the joint case conference report, including all discovery deadlines and the expected trial date, had long expired. Two months after the supreme court's order of reversal and remand, the district court conducted a status hearing with the parties and, apparently sua sponte but without objection by either party, issued a scheduling order which, among other things, extended the deadlines for disclosing both initial expert witnesses and rebuttal experts. The district court's revised

scheduling order did not specify whether the requirement to prepare and exchange expert reports would once again be waived.

Balkenbush subsequently retained a new expert witness, Dr. Hugh Calkins, who had not been previously designated. Adhering to the original stipulation filed before the supreme court appeal, Balkenbush did not provide a written report outlining Dr. Calkins' testimony. The DeChambeaus objected to the designation of Dr. Calkins based on Balkenbush's failure to supply an expert report describing his testimony, filing both a motion to strike and a motion in limine seeking to prevent him from testifying at trial. Both were denied. The case proceeded to trial with Dr. Calkins testifying to the jury that, in his expert opinion, Balkenbush had not violated the applicable standard of care. The jury returned a verdict in favor of Balkenbush. The DeChambeaus filed a motion for a new trial arguing that admission of Dr. Calkins' testimony constituted error, which the district court denied. The DeChambeaus now appeal both from the verdict and from the denial of their motion for new trial, presenting the same arguments for both.

## ANALYSIS

Of the various issues raised by the DeChambeaus, the one that has been properly preserved for our review and merits extensive discussion is whether the trial court abused its discretion by allowing Dr. Calkins to testify at trial when Balkenbush never produced an expert report pursuant to NRCP 16.1(a)(2)(B).

The starting point for our analysis is, as always, the text of the governing rule. Expert reports are governed by NRCP 16.1(a)(2)(B), which provides, in part:

COURT OF APPEALS
OF
NEVADA

(O) 1947B

4

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The court, upon good cause shown or by stipulation of the parties, may relieve a party of the duty to prepare a written report in an appropriate case. . . .

The purpose of discovery rules "is to take the surprise out of trials of cases so that all relevant facts and information pertaining to the action may be ascertained in advance of trial." *Washoe Cty. Bd. of Sch. Trs. v. Pirhala*, 84 Nev. 1, 5, 435 P.2d 756, 758 (1968) (internal quotation marks omitted). Normally, we review district court decisions relating to the adequacy of expert reports and the admission of expert testimony under NRCP 16.1(a)(2)(B) for an abuse of discretion. *See Khoury v. Seastrand*, 132 Nev. ___, ___, 377 P.3d 81, 90 (2016) ("This court reviews the decision of the district court to admit expert testimony without an expert witness report or other disclosures for an abuse of discretion."). Permitting an expert witness to testify in violation of the requirement to provide a written report can, in certain circumstances, constitute an abuse of that discretion. *See generally id.*

But the question in this case is whether the parties voluntarily waived the application of that rule. NRCP 16.1(a)(2)(B) expressly provides that the expert report requirement controls "[e]xcept as otherwise stipulated or directed by the court" and the court "upon good cause shown or by stipulation of the parties, may relieve a party of the duty to prepare a written report in an appropriate case." Thus, the rule itself provides that its requirements are not mandatory and do not necessarily apply to every case, but may be waived either by the court or by stipulation of the parties.

Here, the parties unquestionably stipulated to waive the requirement, at least initially in their original joint case conference report. "A written stipulation is a species of contract." *Redrock Valley Ranch, LLC v. Washoe Cty.*, 127 Nev. 451, 460, 254 P.3d 641, 647 (2011). Stipulations should therefore generally be read according to their plain words unless those words are ambiguous, in which case the task becomes to identify and effectuate the objective intention of the parties. *See Galardi v. Naples Polaris, LLC*, 129 Nev. 306, 309-10, 301 P.3d 364, 366 (2013). When examining the supposed "intent" behind contractual words, what matters is not the subjective intention of the parties (i.e., what the parties may have thought in their minds), but rather the more objective inquiry into the meaning conveyed by the words they selected to define the scope of the agreement. *See Hotel Riviera, Inc. v. Torres*, 97 Nev. 399, 401, 632 P.2d 1155, 1157 (1981) ("[T]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs, not on the parties' having meant the same thing but on their having said the same thing." (alteration in original, internal quotation marks omitted)). Thus, the inquiry is not into what the attorneys may have intended in their minds to convey but rather the most reasonable meaning to be given to the words they utilized in the stipulation itself. *See Oakland-Alameda Cty. Coliseum, Inc. v. Oakland Raiders, Ltd.*, 243 Cal. Rptr. 300, 304 (Ct. App. 1988) (providing that contractual intention, whenever possible, must be "ascertained from the writing alone"). *See generally* Oliver W. Holmes, *The Theory of Legal Interpretation*, 12 Harv. L. Rev. 417, 417-18 (1899) (stating that when determining contractual intent, "we ask, not what this man meant, but what those words would mean in the mouth of a

normal speaker of English, using them in the circumstances in which they were used").

Here, the stipulation contains no express deadline or time limit. The question thus becomes what the parties intended this silence to mean about how long the stipulation should last. The DeChambeaus argue that once the district court subsequently entered a superseding order following the remand containing new deadlines, the situation reverted by default back to the expectations of NRCP 16.1(a)(2)(B). They note that the parties never agreed to re-enter their prior stipulation and the district court's superseding order never extended it. Thus, they argue that the prior stipulation terminated when the joint case conference report in which it was contained was supplanted by the new scheduling order. In contrast, Balkenbush argues that the district court's silence implies that it did not intend to alter the parties' original agreement to waive expert reports, that the parties themselves never agreed to alter it, and it therefore remained in effect throughout the litigation.

In the absence of ambiguity or other factual complexity, interpreting the meaning of contractual terms presents a question of law that we review de novo. *Galardi*, 129 Nev. at 309, 301 P.3d at 366. On balance, Balkenbush's position is by far the more reasonable and the most consistent with the plain language of the stipulation. The purpose of the original stipulation is self-evident: to simplify the discovery process by relieving the parties of the obligation to do something that the rules would otherwise require but the parties thought unnecessary. Moreover, the preparation of expert reports often comprises the single most expensive (and sometimes time-consuming) part of the discovery process, so a second obvious goal of the stipulation was to save both parties time and money.

Consequently, there are two flaws inherent in the way the DeChambeaus would have us read the stipulation. They argue in effect that the stipulation was designed to be only temporary and to automatically disappear whenever subsequent scheduling orders were entered, even when those subsequent orders said nothing about expert reports. But reading it that way would result in complicating, not simplifying, the course of discovery by requiring expert reports to be submitted some of the time (i.e., after new scheduling orders were entered), but not at other times (i.e., so long as the original scheduling order remained in effect). It would be more than a little odd to read the stipulation as designed to create such inconsistency and uncertainty at different times during the course of the case and effectively make the litigation more complex than if the parties had never entered into it in the first place and just followed the existing rules of procedure instead.

The second flaw in their argument is that it reads the words of the stipulation in a way that is both unnatural and inconsistent with the way that lawyers and judges ordinarily do things. Normally, any order issued by the court on any matter is deemed to remain in effect until expressly superseded by another order on the same question. *See, e.g.,* NRCP 16(e) ("[Pre-trial orders] shall control the subsequent course of the action unless modified by a subsequent order."); *Douglas v. Burley*, 134 So. 3d 692, 697 (Miss. 2012) (holding that "upon remand, prior orders governing discovery remain in place absent a party's motion to extend deadlines and a subsequent order by the trial court"); *see also Greenawalt v. Sun City W. Fire Dist.*, 250 F. Supp. 2d 1200, 1203, 1206-07 (D. Ariz. 2003) (original scheduling order deadline for filing dispositive motions remained in effect when post-remand scheduling order did not set a new deadline); *Cell*

*Therapeutics, Inc. v. Lash Grp., Inc.*, No. C07-0310JLR, 2010 WL 11530557, at *5 n.7 (W.D. Wash. Apr. 30, 2010) ("Unless the court modifies it, the scheduling order entered in January 2008 remains in effect."). The stipulation here contains no language suggesting that the parties intended to depart from the typical way that other stipulations and orders are ordinarily handled between lawyers and by courts.

Accordingly, in the absence of any indication that the parties intended their agreement to mean something else, the most reasonable way to understand a stipulation like the one before us is that the parties drafted it to govern throughout the course of the litigation until and unless subsequently voided either by the court or by the parties themselves.[1] Once the parties agreed to the stipulation, it remained in effect until modified or

---

[1]The concurrence proposes an alternative line of reasoning. First, it proposes that Nevada should follow a decision from another jurisdiction even when the underlying rules of civil procedure are not the same in both states. Second, it suggests that the district court's revised scheduling order was ambiguous, but that the DeChambeaus waived the right to challenge this ambiguity on appeal because they failed to timely object to the entry of the revised scheduling order—a conclusion with which we agree, which is why the validity of the revised scheduling order is not at issue in this appeal—and also failed to first ask the district court to "clarify" the scope of the revised scheduling order—a conclusion with which we disagree, for the following reasons. The DeChambeaus would have had little reason to seek any such clarification until Balkenbush disclosed the new expert without an expert report, because only then would it have become apparent that any disagreement existed over the meaning of the revised scheduling order. After the expert was disclosed, the DeChambeaus filed both a motion to strike the expert and a motion in limine to prevent the expert from testifying at trial. The concurrence apparently believes that these two motions were not enough to preserve the matter for appeal unless the DeChambeaus also asked for "clarification" as well. But there is no precedent or authority cited for this proposition, and we disagree with it.

superseded by any other agreement between the parties or a contrary order of the court.[2]

## CONCLUSION

In this case, the parties expressly stipulated to waive the requirement to produce expert reports under NRCP 16.1(a)(2)(B). There is no evidence that the parties intended it to expire at any particular point in

---

[2]The DeChambeaus allege a number of other errors relating in some way to Dr. Calkins' trial testimony that can be disposed of without extensive discussion. First, as to their arguments that the district court erred in entering a new scheduling order, that Dr. Calkins was not qualified to testify, and that his testimony exceeded the scope of appropriate expert testimony under *Hallmark v. Eldridge*, 124 Nev. 492, 189 P.3d 646 (2008), they did not object to these alleged errors below, and consequently the matters have not been properly preserved for appeal. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal."). As to the argument that the district court erred in precluding them from calling a rebuttal expert, they failed to provide a transcript of the trial for our review, so we have no record that this happened in the way the DeChambeaus describe, what reasons the district court might have given for doing it, or whether a timely objection was made below. *See Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 603, 172 P.3d 131, 135 (2007) (holding that the appellant is responsible for making an adequate appellate record, and when "appellant fails to include necessary documentation in the record, we necessarily presume that the missing portion supports the district court's decision"). Furthermore, without a transcript, we have no basis for determining what the proposed rebuttal evidence would have been and cannot evaluate whether the rebuttal testimony might have affected the outcome of the trial. *See Carr v. Paredes*, Docket Nos. 60318, 61301 (Order of Affirmance, Jan. 13, 2017) ("To preserve excluded testimony for appeal, the party must make a specific offer of proof to the trial court on the record." (citing *Van Valkenberg v. State*, 95 Nev. 317, 318, 594 P.2d 707, 708 (1979))); *Khoury*, 132 Nev. at ___, 377 P.3d at 94 (stating that to be reversible, a party must show that, "but for the alleged error, a different result might reasonably have been reached" (internal quotation marks omitted)).

the litigation, and the terms of the stipulation itself contained no such condition or limitation. The district court did not overrule the prior stipulation, and the parties never agreed to modify it. In the absence of any indication that the district court and the parties did not intend for the stipulation to continue, we conclude that it remained in effect and Balkenbush was not required to submit an expert report in connection with Dr. Calkins. Consequently, the district court did not abuse its discretion by allowing Dr. Calkins to testify at trial even though no expert report was provided. We therefore affirm the judgment of the district court and the denial of the motion for a new trial.

_____, J.
Tao

I concur:

_____, J.
Gibbons

SILVER, C.J., concurring:

I concur in the result only. I do believe, however, that the basis of this opinion should have focused on the issue of whether—on remand by the Nevada Supreme Court with discovery closed—the district court erred by sua sponte issuing a *new* scheduling order extending the time for expert disclosures. Nevada law is silent in this situation, but the Mississippi case of *Douglas v. Burley*, 134 So. 3d 692 (Miss. 2012) is illustrative here.

In *Burley*, the lower court entered an initial scheduling order providing discovery deadlines. *Id.* at 694. After discovery closed, but prior to trial, the defendants moved to dismiss and the lower court granted the defendants' motion. *Id.* at 695. The Mississippi Supreme Court reversed, and upon remand the plaintiff noticed a new expert. *Id.* The defendants moved to strike plaintiff's newly designated expert on remand, arguing that the notice was filed years after the close of discovery. *Id.* The plaintiff argued that the prior scheduling order had no effect on remand. *Id.* at 696. The trial court sua sponte reopened discovery in response and refused to strike the newly designated expert. *Id.* The defendant then filed an interlocutory appeal challenging the district court's order reopening discovery. *Id.* The Mississippi Supreme Court reversed, holding that "upon remand, prior orders governing discovery remain in place absent a party's motion to extend deadlines and a subsequent order by the trial court." *Id.* at 697.

Here, similar to *Burley*, the district court granted summary judgment after discovery had closed, and upon remand from the Nevada Supreme Court, the district court inexplicably, sua sponte, entered a new scheduling order extending the time for expert disclosures at a status check prior to resetting the trial. Coincidently, like *Burley,* respondents noticed a

new expert for the new trial setting. Prior to trial, appellants moved to strike the expert and filed a motion in limine to preclude the new expert's testimony.

I believe that this court should have followed *Burley* and held that prior discovery orders remain in place absent either a party's motion to extend deadlines or absent a subsequent district court order to the contrary. Nevertheless, distinguishable from *Burley*, appellants here conceded at oral argument that they never objected to the district court's sua sponte scheduling order on remand. As a result, I believe that appellants are now precluded on appeal from challenging the district court's order claiming abuse of discretion. *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal.").

Contrary to the majority's analysis, in my view the question of whether the district court's sua sponte discovery order required the parties under NRCP 16.1 to prepare expert reports or whether the parties' initial stipulation waiving the expert report requirement governed was ambiguous and not clear. The parties' initial stipulation contained no express deadline or time limit. On the other hand, the district court's sua sponte new scheduling order was also silent as to whether the parties' prior stipulation continued in light of the court's re-opening of discovery.

I believe that the majority opinion unfairly attacks the parties' arguments because both are reasonable interpretations of how the prior discovery stipulation affected the district court's later order. However, dispositive in my view is also the fact that appellants never timely requested that the district court *clarify* its order as to whether expert

reports were subsequently required or whether the parties' prior discovery stipulation waiving expert reports governed going forward into the second trial setting.

Much to appellants' chagrin, prior to the second trial setting, respondents designated a *brand new expert*—an expert not previously designated before the first trial setting after discovery had closed. But, instead of corresponding with opposing counsel, or filing an order shortening time requesting the district court immediately clarify its discovery order as to whether the parties' prior stipulation was in effect, or perhaps noticing the newly designated expert for deposition, appellants appear to have strategically waited. Appellants' strategy—waiting until *after discovery closed* to then file a motion to strike expert and a motion in limine to preclude that new expert from testifying for failing to produce an expert report—just did not pay off under these circumstances. Nevertheless, I do not agree with the majority's analysis of the issues raised in this appeal, and, therefore, I respectfully concur in result only.

_____, C.J.
Silver