138 Nev., Advance Opinion 72

## IN THE COURT OF APPEALS OF THE STATE OF NEVADA

JOHN ILIESCU, JR., AND SONNIA
ILIESCU, TRUSTEES OF THE JOHN
ILIESCU, JR. AND SONNIA ILIESCU
1992 FAMILY TRUST; JOHN ILIESCU,
JR., AN INDIVIDUAL; AND SONNIA
ILIESCU, AN INDIVIDUAL,
Appellants,
vs.
THE REGIONAL TRANSPORTATION
COMMISSION OF WASHOE COUNTY,
Respondent.

No. 83212-COA

FILED

NOV 17 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

JOHN ILIESCU, JR., AND SONNIA
ILIESCU, TRUSTEES OF THE JOHN
ILIESCU, JR. AND SONNIA ILIESCU
1992 FAMILY TRUST; JOHN ILIESCU,
JR., AN INDIVIDUAL; AND SONNIA
ILIESCU, AN INDIVIDUAL,
Appellants,
vs.
REGIONAL TRANSPORTATION
COMMISSION OF WASHOE COUNTY,
Respondent.

No. 83756-COA

Consolidated appeals from district court orders granting summary judgment and awarding attorney fees and costs in a tort and contract action. Second Judicial District Court, Washoe County; David A. Hardy, Judge.

*Affirmed in part, reversed in part, vacated in part, and remanded.*

22-36120

Albright, Stoddard, Warnick & Albright and D. Chris Albright, Las Vegas,
for Appellants.

Woodburn & Wedge and Dane W. Anderson, Reno,
for Respondent.

_____

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., TAO and BULLA,
JJ.

## OPINION

By the Court, GIBBONS, C.J.:

In this appeal, we address the grants of dismissal and summary judgment as to claims of improper actions by the Regional Transportation Commission of Washoe County that occurred during the completion of a construction project on appellants' property after condemnation proceedings. In so doing, we discuss actions in tort and contract law that remain underdeveloped in Nevada law. We conclude that the district court correctly dismissed appellants' claims for waste and injunctive relief, and correctly granted summary judgment on their contract-based claims. However, the district court erred in granting summary judgment on appellants' claims for trespass and declaratory relief. For the reasons articulated herein, we affirm in part, reverse in part, vacate in part, and remand.

### FACTS AND PROCEDURAL HISTORY

Although this is not an appeal from a condemnation action, the facts underlying this appeal began with one. Respondent Regional Transportation Commission of Washoe County (RTC) filed a complaint in eminent domain seeking to acquire a permanent easement, a public utility

COURT OF APPEALS
OF
NEVADA

easement, and a temporary construction easement on commercial property owned by the John Iliescu, Jr. and Sonnia Iliescu 1992 Family Trust. Appellants John Iliescu, Jr., and Sonnia Iliescu (collectively, the Iliescus) are trustees of the family trust. The RTC sought the easements in furtherance of its "4th Street/Prater Way Complete Street and [Bus Rapid Transit] Project" in Reno, which was intended to improve traffic flow along 4th Street and Prater Way. Specifically, the project included "undergrounding of existing overhead utilities within the [p]roject area, construction of curbs, gutters, pedestrian ramps and sidewalks, and installation of new lighting fixtures and landscaping within the [p]roject limits." Eventually, the parties stipulated to, and the district court ordered, the taking in exchange for a payment of $11,065 to the Iliescus as just compensation. The court also ordered that the permanent easement and the public utility easement were "perpetual easements" for access to and maintenance of the public utilities.

Ten months after the district court's order in the condemnation proceedings, the Iliescus filed a complaint alleging 12 causes of action against the RTC. According to the Iliescus, during the previous project and despite their objections, the RTC and its contractors drove over and parked their vehicles (including 20-ton work trucks) on the Iliescus' "Remaining Property"—a parking lot on the parcel not subject to condemnation. The Iliescus alleged that the RTC's conduct precluded them at times from using any portion of the "Remaining Property," caused physical damage to the parking lot, and caused both John and Sonnia to suffer severe and ongoing "psychological and emotional anguish, pain and distress, with physical manifestations."

The RTC filed a first motion to dismiss 8 of the complaint's 12 causes of action. During litigation, the parties stipulated that the Iliescus no longer wished to pursue damages for emotional distress or personal injury. The district court therefore dismissed their claim for intentional and/or negligent infliction of emotional distress.

The Iliescus filed an amended complaint alleging 11 causes of action.[1] Thereafter, the RTC filed a supplemental motion to dismiss as to six of the causes of action. The district court granted the RTC's motion to dismiss as to the Iliescus' claims for injunctive relief, breach of fiduciary duty, waste, conversion, and tortious breach of the covenant of good faith and fair dealing. The court denied the motion to dismiss as to the Iliescus' civil conspiracy claim.

The RTC eventually moved for summary judgment as to the Iliescus' remaining claims, which included breach of contract, breach of the implied covenant of good faith and fair dealing, trespass, civil conspiracy, negligence, and declaratory relief. The Iliescus opposed the motion and supported their opposition with various exhibits that had previously been filed in the case. The district court ultimately granted the RTC's motion for summary judgment, ruling that the Iliescus had failed to present any admissible evidence in support of their claims.[2] It subsequently granted the RTC's motion for attorney fees, ruling that although the Iliescus appeared

_____

[1]The causes of action included breach of contract, breach of the covenant of good faith and fair dealing (contract claim), breach of fiduciary duty, waste, conversion, trespass, civil conspiracy, negligence, tortious breach of the covenant of good faith and fair dealing, injunctive relief, and declaratory relief.

[2]On appeal, the Iliescus only challenge the district court's rulings discussed herein.

to have good faith bases for bringing their claims, "their counsel failed to produce discovery or dismiss the action if discovery would be impossible due to hardship."[3]  The district court awarded the RTC $61,057.07 in attorney fees under NRS 18.010(2)(b) and $3,647.35 in costs as the prevailing party under NRS 18.020.  The Iliescus now raise multiple issues on appeal.  We address each in turn.

*The district court did not err in dismissing the Iliescus' claim for waste*

The Iliescus argue the district court erred in dismissing their claim for waste and ruling that the RTC was not a guardian or tenant as to their "Remaining Property" (the parking lot) for the purposes of satisfying NRS 40.150.[4]  They argue the RTC "had been granted entry rights onto certain portions of [their] [p]roperty" and therefore was a tenant of the property and could commit waste by damaging the surface of the lot with its heavy equipment.  The RTC counters that the Iliescus' complaint never alleged that the RTC was a tenant as to their parking lot.  It argues that, indeed, the complaint made clear that the RTC and its contractors used the parking lot despite having no right to do so and over the Iliescus' frequent objections.

---

[3]We acknowledge that the Iliescus could have done more to vigorously prosecute their claims before the district court.  During the proceedings below, the RTC requested multiple times that the court dismiss the Iliescus' case for lack of prosecution.  As pertinent to this appeal, the district court denied each of those requests.

[4]"If a guardian, tenant for life or years, joint tenant or tenant in common of real property commit waste thereon, any person aggrieved by the waste may bring an action against the guardian or tenant who committed the waste, in which action there may be judgment for treble damages." NRS 40.150.

A defendant's motion to dismiss "under NRCP 12(b)(5) is subject to a rigorous standard of review on appeal." *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008) (internal quotation marks omitted). In reviewing dismissal under NRCP 12(b)(5), we recognize all factual allegations in the plaintiffs' complaint as true and draw all inferences in their favor. *Id.* at 228, 181 P.3d at 672. A claim should be dismissed under NRCP 12(b)(5) only if it appears beyond a doubt that the plaintiffs could prove no set of facts, which, if true, would entitle them to relief. *Id.* Because Nevada is a "notice-pleading" jurisdiction, a complaint need only set forth sufficient facts to demonstrate the necessary elements of a claim for relief so that the defending party has "adequate notice of the nature of the claim and relief sought." *W. States Constr., Inc. v. Michoff*, 108 Nev. 931, 936, 840 P.2d 1220, 1223 (1992); *see also Droge v. AAAA Two Star Towing, Inc.*, 136 Nev. 291, 308-09, 468 P.3d 862, 878-79 (Ct. App. 2020) (discussing Nevada's liberal notice-pleading standard).

Nevada law provides for a cause of action against a guardian or tenant of real property who "commit[s] waste *thereon*." NRS 40.150 (emphasis added). "Waste is generally considered a tort defined as the destruction, alteration, misuse, or neglect of property by one in rightful possession to the detriment of another's interest in the same property." 8 Michael Allan Wolf, *Powell on Real Property* § 56.01 (2021). A cause of action for waste requires the defendant to be in or have been in lawful possession of the property on which the alleged waste occurred. *See Stephenson v. Nat'l Bank of Winter Haven*, 109 So. 424, 425-26 (Fla. 1926) ("[W]aste is an abuse or destructive use of the property by one in rightful possession."); *Hamilton v. Mercantile Bank of Cedar Rapids*, 621 N.W.2d 401, 409 (Iowa 2001) ("A claim for waste is an action at law brought by a

remainderman against a tenant in lawful possession of land . . . ."); *Mich. Oil Co. v. Nat. Res. Comm'n*, 276 N.W.2d 141, 147 (Mich. 1979) ("[T]he ordinary use of the term 'waste' does not refer only to waste of oil and gas, but includes any spoilation or destruction of the land, including flora and fauna, by one lawfully in possession, to the prejudice of the estate or interest of another."); *Meyer v. Hansen*, 373 N.W.2d 392, 395 (N.D. 1985) ("Waste may be defined as an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession, which results in a substantial injury."). Not surprisingly, then, each type of tenancy mentioned in NRS 40.150 includes an interest in real property. *See* NRS 40.150 (stating that a waste action can be maintained against a "tenant for life or years, joint tenant or tenant in common of real property").

Here, the Iliescus alleged that, in completing its project, the RTC damaged their parking lot, which was on "that portion of [their] [p]roperty not subject to the condemnation, and not involved in whatsoever nature in the [p]roject." The Iliescus further alleged that they frequently objected to this "unauthorized and illegal use" of their parking lot. The Iliescus did not argue below, nor do they argue on appeal, that the RTC had a legal right to use their parking lot. Rather, both below and on appeal, they argue that the RTC was a tenant only as to the property that was condemned.

Assuming the RTC was a tenant over the Iliescus' condemned property, under NRS 40.150, the RTC could only have committed waste "thereon"—on the condemned property, not on the Iliescus' parking lot. And the Iliescus have not alleged that the RTC committed waste as to the condemned portion of their property. Therefore, even taking every

inference in the Iliescus' favor, *see Buzz Stew*, 124 Nev. at 228, 181 P.3d at 672, the district court did not err by dismissing their waste claim.

*The district court did not err in dismissing the Iliescus' separate cause of action for injunctive relief*

The Iliescus argue the district court erred in dismissing their separate cause of action for injunctive relief because "[i]t is entirely possible and even plausible that the RTC" may again "overstep [its] boundaries in accessing and damaging the remaining portions of [their] property" during some future repairs to the RTC's permanent easements.[5] As a threshold matter, injunctive relief is a remedy, not a separate cause of action. *See State Farm Mut. Auto. Ins. Co. v. Jafbros Inc.*, 109 Nev. 926, 928, 860 P.2d 176, 178 (1993) (explaining that a violated right is a prerequisite to granting injunctive relief and an injunction is not appropriate "to restrain an act which does not give rise to a cause of action" (internal quotation marks omitted)); *Knutson v. Vill. of Lakemoor*, 932 F.3d 572, 576 n.4 (7th Cir. 2019) ("With respect to injunctive relief, that is a remedy, not a cause of action, and thus should not be pleaded as a separate count."); *Klay v. United Healthgrp., Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) (explaining that "traditional injunctions are predicated upon [a] cause of action"); *Shell Oil Co. v. Richter*, 125 P.2d 930, 932 (Cal. Dist. Ct. App. 1942) (explaining that injunctive relief is a remedy, not a cause of action, and thus, a cause of action must be asserted against the party before injunctive relief may be

---

[5]The Iliescus also argue that the RTC could have been enjoined to restore their property to the state it was in before the RTC allegedly damaged it. However, they did not make this argument below, and we decline to consider it on appeal. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (explaining that issues not argued below are "deemed to have been waived and will not be considered on appeal").

requested against that party); *Terlecki v. Stewart*, 754 N.W.2d 899, 912 (Mich. Ct. App. 2008) ("It is well settled that an injunction is an equitable remedy, not an independent cause of action."). Therefore, to the extent that the Iliescus pleaded injunctive relief as an independent cause of action, the district court did not err in dismissing that claim. *See Knutson*, 932 F.3d at 576 n.4.

However, "the question whether a litigant has a 'cause of action' is analytically distinct *and prior to* the question of what relief, if any, a litigant may be entitled to receive." *Davis v. Passman*, 442 U.S. 228, 239 (1979) (emphasis added); *see also State Farm*, 109 Nev. at 928, 860 P.2d at 178 ("It is axiomatic that a court cannot provide a remedy unless it has found a wrong."). Therefore, even though we affirm the dismissal of the independent cause of action, as discussed below, we reverse the grant of summary judgment on the Iliescus' trespass claim. Therefore, on remand, they may seek permanent injunctive relief as a remedy for that claim, should they prevail on it.

*The district court did not err in granting the RTC's motion for summary judgment as to the Iliescus' contract-based claims*

The Iliescus argue the district court erred in granting summary judgment in favor of the RTC as to their breach-of-contract claim because the parties had entered into a contract by way of a stipulation in the prior condemnation proceedings. They argue that, at the very least, their evidence that a stipulation existed should have precluded summary judgment. The RTC counters that the prior stipulation was not relevant to any alleged use of or damage to the Iliescus' parking lot. It further argues that summary judgment was proper because the Iliescus failed to provide any evidence of causation or actual damages in support of their breach-of-contract claim.

COURT OF APPEALS
OF
NEVADA

(O) 1947B

We review a district court's order granting summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper if the pleadings and all other evidence on file demonstrate that there exists no genuine dispute of material fact "and that the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted); *see also* NRCP 56(a). "A factual dispute is genuine when the evidence is such that a rational trier of fact could return a verdict for the nonmoving party." *Wood*, 121 Nev. at 731, 121 P.3d at 1031. In rendering a decision on a motion for summary judgment, all evidence "must be viewed in a light most favorable to the nonmoving party." *Id.* at 729, 121 P.3d at 1029. The party moving for summary judgment must meet its initial burden of production to show there exists no genuine dispute of material fact. *Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 602, 172 P.3d 131, 134 (2007). The nonmoving party must then "transcend the pleadings and, by affidavit or other admissible evidence, introduce specific facts that show a genuine [dispute] of material fact." *Id.* at 603, 172 P.3d at 134.

To prevail on a claim for breach of contract, the plaintiff must establish (1) the existence of a valid contract, (2) that the plaintiff performed, (3) that the defendant breached, and (4) that the breach caused the plaintiff damages. *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006); *Reichert v. Gen. Ins. Co. of Am.*, 442 P.2d 377, 381 (Cal. 1968). Relating to damages, a plaintiff must prove both (1) a causal connection between the defendant's breach and the damages asserted, and (2) the amount of those damages. *See Mort Wallin of Lake Tahoe, Inc. v. Commercial Cabinet Co.*, 105 Nev. 855, 857, 784 P.2d 954, 955 (1989) ("The party seeking damages has the burden of proving both the fact of damages

Court of Appeals
of
Nevada

(O) 1947B

and the amount thereof."); *Saks Fifth Ave., Inc. v. James, Ltd.*, 630 S.E.2d 304, 311 (Va. 2006) ("A plaintiff thus must prove two primary factors relating to damages. First, a plaintiff must show a causal connection between the defendant's wrongful conduct and the damages asserted. Second, a plaintiff must prove the amount of those damages by using a proper method and factual foundation for calculating damages." (internal citations omitted)).[6] The burden of proving the amount of damages "need not be met with mathematical exactitude, but there must be an evidentiary basis for determining a reasonably accurate amount of damages." *Mort Wallin*, 105 Nev. at 857, 784 P.2d at 955.

Here, the Iliescus alleged that, during the prior condemnation proceedings, they entered into a valid agreement by which the RTC was entitled to complete its project in exchange for compensating the Iliescus for the condemnation. They further alleged that the way in which the RTC carried out the project constituted a breach of the parties' agreement. The Iliescus supported these allegations with a portion of an order from the condemnation proceedings that ordered the parties to "cooperate so as to

---

[6]*See also Omaha Pub. Power Dist. v. Darin & Armstrong, Inc.*, 288 N.W.2d 467, 474 (Neb. 1980) ("It is a basic concept that in any damage action for breach of contract the claimant must prove that the breach of contract complained of was the proximate cause of the alleged damages."); *Florafax Int'l, Inc. v. GTE Mkt. Res., Inc.*, 933 P.2d 282, 296 (Okla. 1997) ("In order for damages to be recoverable for breach of contract they must be clearly ascertainable . . . and it must be made to appear they are the natural and proximate consequence of the breach and not speculative and contingent."); *Logan v. Mirror Printing Co. of Altoona*, 600 A.2d 225, 226 (Pa. Super. Ct. 1991) ("In order to recover for damages pursuant to a breach of contract, the plaintiff must show a causal connection between the breach and the loss."); *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 758 (Tex. App. 2000) ("The absence of [a] causal connection between the alleged breach [of contract] and the alleged damages will preclude recovery.").

minimize interference between construction of the [p]roject and [the Iliescus'] use of the remaining land . . . on APN 008-244-15." That order also made multiple references to a stipulation to which the parties had agreed. The Iliescus further provided a detailed quote for services, from Desert Engineering, to repair the parking lot for $84,550.

Below, the RTC met its initial summary judgment burden by pointing out that there was an absence of evidence to support the Iliescus' breach-of-contract claim as to damages. *See Cuzze*, 123 Nev. at 602-03, 172 P.3d at 134 (explaining that where the nonmoving party would bear the burden of persuasion at trial, the party moving for summary judgment can satisfy its burden of production by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case" (omission and internal quotation marks omitted)). Thus, the burden shifted to the Iliescus to "transcend the pleadings" and demonstrate there was a genuine dispute of material fact as to damages. *Id.* at 603, 172 P.3d at 134.

In response, the Iliescus provided photographs purporting to show the state of the parking lot prior to the RTC's project. They also provided photographs allegedly depicting the RTC's workers during the completion of the project, with their vehicles parked on the Iliescus' parking lot in the background. However, although the Desert Engineering quote may have served to demonstrate a dispute as to the amount of their damages, the Iliescus failed to present any evidence demonstrating a causal connection between the RTC's alleged breach of contract and the damage to the parking lot. They failed to provide photographs depicting the parking lot after the RTC completed its project; deposition testimony stating that the RTC's breach had caused the damage; expert testimony regarding

causation, scope of repair, diminishment in value, and damages;[7] or any other evidence related to causation, only argument.

Additionally, although the Iliescus provided evidence that the parties had entered into a contract previously,[8] it is unclear how a breach of that contract could have caused damage to the parking lot. Even assuming the RTC had agreed, as the prior district court ordered, to "cooperate so as to minimize interference between construction of the [p]roject and [the Iliescus'] use of [their] remaining land," the Iliescus have not explained how a breach of that agreement could have caused physical damage to their parking lot.[9] Accordingly, the Iliescus did not demonstrate that there existed evidence of causation, an essential element of a breach-of-contract claim, therefore failing to create a genuine dispute as to damages.

---

[7]The district court determined that expert evidence was needed on these matters. The Illiescus do not argue that the district court erred in this determination, so this issue is waived. *See Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) (providing that issues not raised on appeal are deemed waived).

[8]"A written stipulation is a species of contract." *DeChambeau v. Balkenbush*, 134 Nev. 625, 628, 431 P.3d 359, 361 (Ct. App. 2018) (quoting *Redrock Valley Ranch, LLC v. Washoe County*, 127 Nev. 451, 460, 254 P.3d 641, 647 (2011)).

[9]We note that, in their stipulation to dismiss their personal injury claims, the Iliescus agreed that they would only pursue compensatory damages in this case as to physical damage to their parking lot—presumably waiving any right to recover compensatory damages for any interference with their use of their land.

The Iliescus further summarily argue the district court erred in granting summary judgment against them as to their claim for breach of the implied covenant of good faith and fair dealing. "Where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 232, 808 P.2d 919, 922-23 (1991). However, here, the Iliescus have not developed any argument or provided any relevant authority as to why the district court erred in granting summary judgment as to this claim. Therefore, we need not consider it. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (explaining that this court need not consider an appellant's argument that is not cogently argued or lacks the support of relevant authority). In light of the foregoing, the district court did not err in granting summary judgment in favor of the RTC as to the Iliescus' contract-based claims.

*The district court erred in granting summary judgment in favor of the RTC as to the Iliescus' trespass claim and their request for declaratory relief*

Finally, the Iliescus argue the district court erred in granting summary judgment in the RTC's favor as to their trespass claim. Nevada has long recognized trespass as an action for injury to a plaintiff's possession of land. *See Rivers v. Burbank*, 13 Nev. 398, 408 (1878). To maintain a trespass action, the plaintiff must demonstrate that the defendant invaded a property right. *Lied v. Clark County*, 94 Nev. 275, 279, 579 P.2d 171, 173-74 (1978). Where the evidence supports a trespass, an award of nominal damages is not improper. *Parkinson v. Winniman*, 75 Nev. 405, 408, 344 P.2d 677, 678 (1959); *see also Droge*, 136 Nev. at 312 n.17, 468 P.3d at 880 n.17 (stating that the plaintiffs could pursue nominal

damages as to their trespass claim). And "an injunction is an appropriate remedy for the threat of continuing trespass." *S.O.C., Inc. v. Mirage Casino-Hotel*, 117 Nev. 403, 416, 23 P.3d 243, 251 (2001).

To prevail on a claim for trespass, the Iliescus would need to prove that the RTC's conduct constituted an invasion of a property right. *See Lied*, 94 Nev. at 279, 579 P.2d at 173-74. Here, the Iliescus alleged the RTC and its contractors parked vehicles on their parking lot "on virtually every workday during the term of the [p]roject." These vehicles allegedly included the workers' personal vehicles ("pick-up trucks, SUV's[,] and automobiles") along with work trucks weighing approximately 20 tons. According to the Iliescus, this conduct occurred without their consent and despite their "frequent objections" to it. The Iliescus supported these allegations with photographs depicting the vehicles parked on the portion of their property not subject to condemnation (the "[r]emaining [p]roperty" or parking lot). The Iliescus also provided photographs appearing to depict workers working on the RTC's project, with trucks parked in the parking lot in the background. In addition, John testified at his deposition without objection that he assumed the trucks were associated with the RTC because the workers who drove them were not associated with him or Sonnia and "were doing RTC work." Similarly, at her deposition, Sonnia testified that the trucks and equipment parked on the Iliescus' property belonged to "construction people working on the RTC project."

Considering the foregoing, the Iliescus introduced specific facts, using admissible evidence,[10] that demonstrated a genuine dispute of

---

[10]A court may consider all evidence on file when ruling on a motion for summary judgment. *Wood*, 121 Nev. at 729, 121 P.3d at 1029; *see also* NRCP 56(b)(3). The RTC avers that the Iliescus failed to present any

COURT OF APPEALS
OF
NEVADA

(O) 1947B

15

material fact as to their trespass claim. *See Cuzze*, 123 Nev. at 603, 172 P.3d at 134. The RTC does not dispute that the Iliescus owned the property where the easements and parking lot are located, nor does it assert that it had permission or paid rent or some form of remuneration to use the parking lot. The Iliescus' photographs and deposition testimony are evidence such that a rational trier of fact could find that the RTC trespassed on the Iliescus' property and return a verdict in the Iliescus' favor.[11] *See Wood*, 121 Nev. at 731, 121 P.3d at 1031.

Below, the district court granted summary judgment as to the Iliescus' trespass claim by ruling that they had waived their right to pursue nominal damages—in stipulating to pursue only compensatory damages relating to their parking lot and punitive damages—and had then failed to present evidence as to compensatory damages or punitive damages.[12] In so

admissible evidence for their claims during the proceedings below, apparently only because the Iliescus "submitted no declarations or deposition testimony" in their opposition to the RTC's motion for summary judgment. The RTC does not cogently argue why any failure on the Iliescus' part to submit declarations or deposition testimony in opposition to the RTC's summary judgment motion would be fatal to their claims where there existed substantial evidence elsewhere in the court file that was presented for the court to consider regarding trespass, nor does it provide relevant authority in support of that argument. Therefore, we need not consider it. *See Edwards*, 122 Nev. at 330 n.38, 130 P.3d at 1288 n.38.

[11]Although we reverse summary judgment on the trespass claim, we note that the damages available to the Iliescus on this claim may be limited, as the district court has already determined that expert testimony is required to prove certain damages, and that the Iliescus failed to timely identify an expert as required pursuant to NRCP 16.1.

[12]We note that the Iliescus have not pursued the dismissal of their claim for punitive damages on appeal, and therefore, we need not address the propriety of the district court's dismissal of the same. *See Greenlaw v.*

doing, the district court effectively imposed an element of actual damages onto the trespass claim—an element that has not previously been required to sustain a trespass action in Nevada.[13] *See Lied*, 94 Nev. at 279, 579 P.2d at 173-74; *Parkinson*, 75 Nev. at 408, 344 P.2d at 678; *see also* Restatement (Second) of Torts § 158 (Am. Law Inst. 1965) ("One is subject to liability to another for trespass, *irrespective of whether [he or she] thereby causes harm to any legally protected interest of the other*, if [he or she] intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove." (emphasis added)).

Further, in lieu of compensatory damages, nominal damages may still be awarded. Nominal damages are "awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory . . . damages." *Uzuegbunam v. Preczewski*, 592 U.S. ___, ___, 141 S. Ct. 792, 801 (2021). Indeed, as the United States Supreme Court recently recognized in *Uzuegbunam*, "the prevailing rule, 'well established' at common law, was 'that a party whose rights are invaded can *always* recover nominal damages without furnishing any evidence of actual damages.'" *Id.* at ___, 141 S. Ct. at 800 (emphasis added) (internal citations

---

*United States*, 554 U.S. 237, 243 (2008) ("[I]n both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decisions and assign to courts the role of neutral arbiter of matters the parties present.").

[13]The RTC does not argue on appeal that a plaintiff must prove damages as an element of *trespass* and therefore we do not further address this issue. *See Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) (providing that issues not raised on appeal are deemed waived).

omitted). Consistent with this approach, the Nevada appellate courts have long recognized that nominal damages are a proper remedy for trespass, in cases where actual damages cannot be proven. *See Parkinson*, 75 Nev. at 408, 344 P.2d at 678; *Droge*, 136 Nev. at 312 n.17, 468 P.3d at 880 n.17; *see also Uzuegbunam*, 592 U.S. at ___, 141 S. Ct. at 798 (discussing the importance of nominal damages to claims for trespass).

Given the relationship between nominal and compensatory damages, and the purpose behind an award of nominal damages, we conclude that, by preserving their claim to compensatory damages, the Iliescus also preserved nominal damages, as these damages are available to remedy a trespass where compensatory damages are unavailable or unproven. Thus, the district court erred in determining that the Iliescus waived their right to recover nominal damages for trespass.[14] Further, proving damages is particularly unnecessary in this case because the RTC had been granted perpetual easements on the Iliescus' property and the Iliescus were seeking injunctive relief, an appropriate remedy for the threat of continuing trespass.[15] *See S.O.C., Inc.*, 117 Nev. at 416, 23 P.3d at 251.

---

[14]The parties disagree as to whether the Iliescus, by stipulation or otherwise, waived their right to pursue nominal damages in this case because nominal damages were not specifically preserved in the stipulation. However, neither was a claim for nominal damages specifically waived. Further, the parties did not stipulate to dismissal of the Iliescus' trespass claim, nor any damages specifically related to that claim. As explained above, the Iliescus preserved their claim to nominal damages by preserving their claim to compensatory damages and because nominal damages are inherently available for certain types of claims such as trespass.

[15]As explained above, while the district court correctly dismissed the Iliescus' separate cause of action for injunctive relief, they are nevertheless permitted to seek injunctive relief as a remedy.

Accordingly, the district court erred in granting summary judgment in favor of the RTC as to the Iliescus' trespass claim, and thus we reverse the grant of summary judgment on this claim and remand for further proceedings. To the extent that the district court's order granting summary judgment in favor of the RTC as to the Iliescus' request for declaratory relief was predicated on its ruling relating to their trespass claim, that ruling is likewise reversed and remanded for further proceedings.

## CONCLUSION

The district court did not err in dismissing the Iliescus' waste claim because the RTC had no possessory interest as to the Iliescus' parking lot. The court also did not err in dismissing their injunctive relief claim to the extent that it was pleaded as a cause of action. Additionally, the court did not err in granting summary judgment in favor of the RTC as to the Iliescus' contract-based claims.

The district court, however, erred in granting summary judgment as to the Iliescus' trespass and declaratory relief claims. Because we reverse the district court's order granting summary judgment in favor of the RTC as to these claims, the RTC might not be the prevailing party and the district court's order awarding it attorney fees and costs may no longer be appropriate under NRS 18.010(2)(b) and NRS 18.020. That order, therefore, is necessarily vacated. *See Cain v. Price*, 134 Nev. 193, 198, 415 P.3d 25, 30 (2018) (explaining that where a district court's order granting summary judgment is reversed, it is no longer appropriate to consider the respondents the prevailing party, and an award of attorney fees is inappropriate). Consistent with this opinion, we reverse and remand for

further proceedings as to the Iliescus' trespass and declaratory relief claims, and if necessary, to determine if injunctive relief is appropriate.[16]

_____, C.J.
Gibbons

We concur:

_____, J.
Tao

_____, J.
Bulla

---

[16]Insofar as the parties have raised arguments that are not specifically addressed in this opinion, we have considered the same and conclude that they either do not present a basis for relief or need not be reached given the disposition of this appeal.

COURT OF APPEALS
OF
NEVADA